IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES LOCKARD, on behalf of himself and all
others similarly situated,

        Plaintiff,

        v.

EYM KING OF KANSAS, LLC, and EYM
GROUP, INC.,

        Defendants.

Case No. 17-2181-JAR-JPO

## MEMORANDUM AND ORDER

Plaintiff James Lockard brings this action on behalf of himself and others similarly situated, alleging unlawful wage practices under the Fair Labor Standards Act ("FLSA") against Defendants EYM King of Kansas LLC and EYM Group, Inc. (collectively "EYM") at their Burger King restaurants.  Before the Court is Defendants' Motion to Compel Arbitration and to Stay this Action (Doc. 12).  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, the Court grants Defendants' motion.

## I.      Background

On September 24, 2016, EYM hired Plaintiff, who worked at several Burger King stores in the Kansas City area.  That same day, Plaintiff signed an Arbitration Agreement that was included in the EYM King of Kansas, LLC Hourly Management Policies and Procedures ("Handbook").  The Handbook is a thirty-three page consecutively-paginated document that includes eighteen separate policies and procedures that each contains its own signature block.  It makes clear that it is not an employment agreement.  The first item in the Handbook is an Election and Arbitration Agreement ("Arbitration Agreement"), which states, in relevant part:

**a) Mutual Promises to Resolve Claims by Binding Arbitration**: I recognize that disputes may arise between the Company (or one of its affiliates) and me during or after my employment with the Company. I understand and agree that any and all such disputes that cannot first be resolved through the Company's internal dispute resolution procedures or mediation must be submitted to binding arbitration.

I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes.

This agreement to resolve claims by arbitration is mutually binding upon both me and the Company (and its affiliates), and it binds and benefits our successors, subsidiaries, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives.
. . . .

The types of claims covered by this Agreement include, but are not limited to, any and all:

Claims for wages or other compensation; claims for breach of any contract, covenant, or warranty (express or implied);
. . . .

Claims for a violation of any other federal, state or other governmental law, statute, regulation or Ordinance . . . .

. . . .

**d) Complete Agreement**: The Arbitration Procedures in Section IX of the Summary Plan description (and also in section I, paragraph B of the Plan) are incorporated by reference hereto, and made part of this Agreement the same as if they were all written here. This Agreement, together with the incorporated Arbitration Procedures in Section IX of the Summary Plan Description, is the complete agreement between the company and me.  It takes the place of any oral understanding about arbitration, but other written agreements, policies or procedures may also require me to arbitrate any disputes that I may have with the Company.

I am not relying on any statements, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as

2

specifically stated, in this Agreement. If any provision of this agreement is determined to be void or otherwise unenforceable, in whole or in part, such determination shall not affect the validity of the remainder of this Agreement.

**e) Not An Employment Agreement**: Neither this Agreement, the Plan nor the Summary Plan Description shall ever be construed to create any contract of employment, express or implied. This agreement, the Plan or the Summary Plan description do not in any way alter the at-will status of my employment with the Company.

**f) Ratification for Modification or Revocation**: I agree that each and every time that I receive Plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this Agreement again on the date the benefits were paid.

**g) Requirements for Modification or Revocation**: This agreement will survive the termination of my employment with the Company.  This agreement can only be revoked (except as provided in the paragraph below) or modified by a writing signed by both me and the Company's authorized representative that specifically states an intent to revoke or modify this Agreement, and this requirement of a signed writing cannot itself be waived except by such a signed writing.

. . . .

I have read the Election and Arbitration Agreement and have been given the opportunity to clarify any questions regarding its contents.  By signing this Election and Arbitration Agreement, I, the undersigned employee of EYM KING OF KANSAS, LLC elect to participate in the EYM KING OF KANSAS, LLC Employee Injury Benefit Plan (hereinafter "the Plan"), and agree to each of the terms contained in the Election and Arbitration Agreement and the Plan.[1]

Plaintiff signed and dated the Arbitration Agreement on September 24, 2016, on page 6 of the

Handbook.

Plaintiff never received, nor was offered participation or eligibility in the EYM King of

Kansas, LLC Employee Injury Benefit Plan, referenced in the Arbitration Agreement.  Section

---

[1]Doc. 11-1 at 3–5.

IX of the Summary Plan description has not been provided to Plaintiff.  He never received benefits from that Plan.  Because Plaintiff was unfamiliar with the EYM King of Kansas, LLC Employee Injury Benefit Plan and its Summary Plan Description, Plaintiff's counsel asked Defendants' counsel to provide copies of these documents.  In response to this request, Defendants' counsel provided three separate documents: (1) "Synopsis of Coverage Accidental Medical and Accidental Death & Dismemberment Benefit" statement issued to EYM King, LP;[2] (2) "Group Policy Providing Accident & Health Benefits Non-Participating" issued to EYM King, LP;[3] and (3) a second "Group Policy Providing Accident & Health Benefits Non-Participating" issued to EYM King, LP.[4]  None of these documents are the EYM King of Kansas, LLC Employee Injury Benefit Plan or the Summary Plan Description for the EYM King of Kansas, LLC Employee Injury Benefit Plan.  None of these documents contain arbitration procedures that could be incorporated by reference into the Arbitration Agreement.  When Plaintiff's counsel asked Defendants' counsel for the specifically referenced and incorporated agreements, Defendants' counsel responded: "the plans I sent you are the ones that are in existence, regardless of how it may have been referred to in the arbitration agreement."[5]

On page 31 of the Handbook, after the eighteen separate policies and procedures, is an Acknowledgement of Receipt of Hourly Management Policies and Procedures, which contains another signature block.  It states that "By my signature below, I acknowledge that I have received, read and understand the Hourly Management Policies and Procedures, have been given the opportunity to ask questions, have received clarification, and understand for the following

---

[2]Doc. 16-3.

[3]Doc. 16-4.

[4]Doc. 16-5.

[5]Doc. 16-6.

contents," the first of which is the Arbitration Agreement, which includes an itemized list of the

sections included in that agreement.  It then states on page 33:

> I understand that EYM King of Kansas, LLC.'s policies and
> procedures may change from time to time at EYM King of Kansas,
> LLC 's sole discretion with or without notice to me, and that the
> revised information may supersede, modify, or eliminate existing
> policies. I acknowledge that all changes to the Hourly Management
> Policies and Procedures will be binding upon me as of the effective
> date of those changes whether or not my signature confirming
> notice is required.[6]

Plaintiff signed this acknowledgement, in addition to the eighteen other separate policies he was

required to sign in the Handbook.

Plaintiff brings this putative collective action under the FLSA, to include: "All current

and former hourly employees of EYM King of Kansas LLC and EYM Group, Inc., whose

timecards were altered and/or who were not paid overtime premium pay for overtime hours."

Plaintiff alleges that EYM requires its employees to split workweeks at more than one restaurant,

but will only pay overtime if the employee exceeds forty hours in a workweek at one location.

Also, Plaintiff alleges that EYM alters its employees' time clock paperwork for the purpose of

paying employees for less that the hours they actually worked.

## II.    Discussion

While the interpretation of contracts—including arbitration agreements—is generally a

matter of state law, the Federal Arbitration Act ("FAA") imposes certain rules beyond those

normally found in state contract law.[7]  The FAA applies to written arbitration agreements in any

---

[6]Doc. 16-1 at 33.

[7]*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

contract "evidencing a transaction involving commerce."[8]  Congress designed the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and, by enacting the FAA, created "a liberal federal policy favoring arbitration agreements."[9]  Under the FAA, a court should compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement.[10]

"If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains . . . broad and sweeping language."[11]  However, the presumption of arbitrability disappears when the parties dispute whether there is a valid and enforceable arbitration agreement in the first place.[12]  Whether a party agreed to arbitration is a contract issue, which means that arbitration clauses are only valid if the parties intended to arbitrate.[13]  No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit.[14]  Courts apply state-law principles in deciding whether parties agreed to arbitrate.[15]  Here, neither party disputes that Kansas contract law applies.

Plaintiff argues that the Arbitration Agreement is invalid for three reasons: (1) the Arbitration Agreement is one part of the Handbook, which contains a conflicting revocation and modification clause, rendering the Arbitration Agreement illusory; (2) there was no meeting of the minds as to the arbitration procedures that would apply since the Employee Injury Benefit

---

[8]9 U.S.C. § 2.

[9]*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[10]9 U.S.C. §§ 2–3.

[11] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *see also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014).

[12] *Bellman*, 563 F. App'x at 613 (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998)).

[13] *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

[14] *Id.*

[15] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Plan's Summary Description does not exist, and was not provided to Plaintiff; and (3) the Arbitration Agreement is unenforceable for lack of consideration.  The Court addresses each in turn.

### A.        Whether the Arbitration Agreement is Illusory

Plaintiff first argues that the Arbitration Agreement is illusory based on the provision in the acknowledgement and receipt section of the Handbook that any part of the Handbook can be modified or revoked by Defendants at any time with or without notice.  Plaintiff is correct that in the Tenth Circuit, "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or scope is illusory."[16]  Here, while the parties agree that the modification provision in the Arbitration Agreement itself is permissible, they dispute the significance of the provision on page 33 of the Handbook.  Plaintiff contends that since it conflicts with the modification provision in the Arbitration Agreement, it renders the contract ambiguous and thus, the Court must construe the contract against EYM, as the drafter.[17] Defendants contend that the Arbitration Agreement is a separate, stand-alone agreement that requires a writing signed by both parties in order to modify or revoke.  Moreover, Defendant points to the acknowledgement of receipt, which includes a list of the policies and procedures the employee has read and understands.  In addition to listing the Arbitration Agreement, it lists the various subparts of that agreement, including the revocation and modification section.

---

[16] *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002).

[17] *See id.* at 1218–19 ("we interpret the ambiguity created by the Handbook's conflicting provisions as allowing American Golf to change the arbitration provision at will."); *see also Barnes v. Securitas Sec. Systems USA, Inc.*, No. 05-2264-JWL, 2006 WL 42233, at *4 (D. Kan. Jan. 6, 2006) (applying *Dumais* to find arbitration agreement in employee handbook illusory because the acknowledgement of receipt allowed the employer to modify any provision of the handbook other than the at-will employment policy at any time without notice).  In *Dumais* and *Barnes*, the employee handbook did constitute an employment contract, and therefore it controlled over other documents signed by the parties.  *Id.* at *4 (discussing *Dumais*, 299 F.3d at 1219).

The Court agrees that the Arbitration Agreement is separate and distinct from the Handbook.  The Arbitration Agreement does not allow Defendants to unilaterally modify or revoke; in fact, the Arbitration Agreement specifically provides that any modification or revocation be made in writing and signed by both parties.  The Arbitration Agreement was signed separately, and contains a merger clause.[18]   In signing the Handbook's receipt, Plaintiff acknowledged reading and agreeing to not only the Arbitration Agreement, but the provision within that agreement on revocation and modification.  The Court therefore finds that the Arbitration Agreement controls that question and Defendants may not unilaterally modify or revoke the Arbitration Agreement.[19]  Thus, the Arbitration Agreement is not illusory.

Even if the Court agreed that the two provisions created an ambiguity that the Court must construe against the drafter, the Court would decline to decide the issue.  Plaintiff's argument depends on his contention that the Arbitration Agreement is part of a larger contract—the Handbook—and he relies on language outside the confines of the Arbitration Agreement to argue that the contract as a whole is ambiguous.   The United States Supreme Court and the Tenth Circuit counsel that such a claim must be resolved by the arbitrator and not by the Court.[20]

### B.    Whether there was a Meeting of the Minds on Essential Terms

Next, Plaintiff challenges whether there was a meeting of the minds when the parties entered into the Arbitration Agreement, an issue that goes to whether a valid and enforceable agreement to arbitrate was reached in the first place, which is properly before the Court.  Under

---

[18]Doc. 11-1 ("I am not relying on any statements, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as specifically stated, in this Agreement.").

[19]*See Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1226 (D. Kan. 2007).

[20]*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 1204, 1210 (2006) ("a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *In re Cox Enters., Inc. Set-top Cable Tele. Box Antitrust Litig.*, 835 F.3d 1195, 1211–12 (10th Cir. 2016) (finding argument that contract is illusory goes to the contract as a whole where it is based language outside of the arbitration provision).

Kansas law, there must be a meeting of the minds on all essential elements of the contract.[21]  For

there to be a meeting of the minds, "there must be a fair understanding between the parties which

normally accompanies mutual consent and the evidence must show with reasonable definiteness

that the minds of the parties met upon the same matter and agreed upon the terms of the

contract."[22]  "Generally, courts seek to uphold arbitration agreements even where the contract

provisions are somewhat uncertain and indefinite."[23]

Plaintiff argues that there could be no meeting of the minds because the Arbitration

Agreement does not set forth any arbitral procedures since the EYM King of Kansas, LLC

Employee Injury Benefit Plan Summary Description, which was incorporated by reference into

the Arbitration Agreement, was never provided to Plaintiff, and in fact does not appear to exist.

Defendants reply that the lack of arbitral procedures in the Arbitration Agreement does not

invalidate the agreement.  The Court agrees.  Plaintiff cites no authority for the proposition that

arbitration procedures are essential terms of a contract to arbitrate, for which there must be a

meeting of the minds.  The FAA contemplates that there may be agreements that do not provide

for the appointment of an arbitrator, and in such a case, the Court may designate an arbitrator

upon application of the parties.[24]  Once an arbitrator is selected by the Court, the arbitrator can

decide the other procedural aspects of the arbitration.[25]  Several courts have determined that the

failure to specify arbitration procedures in an otherwise enforceable arbitration agreement does

---

[21]*Albers v. Nelson*, 809 P.2d 1194, 1198 (Kan. 1991).

[22]*Sidwell Oil & Gas, Inc. v. Loyd*, 630 P.2d 1107, 1113 (Kan. 1981) (quoting *Steele v. Harrison*, 552 P.2d 957, 962 (Kan. 1976)).

[23]*Heartland v. Premier, Ltd. v. Grp. B & B, LLC*, 31 P.3d 978, 981 (Kan. Ct. App. 2001) (quoting *City of Lenexa v. C.L. Fairley Constr. Co.*, 777 P.2d 851, 854 (1989)).

[24]9 U.S.C. § 5.

[25]*See, e.g.*, *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 455 (S.D.N.Y. 2016).

not render the contract unenforceable.[26]  The Court finds that the arbitration procedures in this case were not essential terms of the contract about which the parties were required to have a meeting of the minds.  As such, Defendants' failure to incorporate by reference the correct document that included the governing arbitration procedures does not affect the validity of the agreement to arbitrate.  The Arbitration Agreement otherwise evidences that the parties intended to form a binding agreement to arbitrate.

### C.    Consideration

Finally, Plaintiff argues that the Arbitration Agreement is invalid for lack of consideration.  Plaintiff contends that because the Arbitration Agreement twice states that the consideration for Plaintiff's agreement to arbitrate is his eligibility for and participation in the EYM King of Kansas, LLC Employee Injury Benefit plan, and this plan does not exist, the Arbitration Agreement fails for lack of consideration.

To be sure, under Kansas law a contract must be supported by adequate consideration.[27] "A promise is without consideration when the promise is given by one party to another without anything being bargained for and given in exchange for it."[28]  Here, the Arbitration Agreement provided that Plaintiff is "giving up the right to a jury trial on all of the claims covered by this Agreement in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes."[29]  A mutual promise to arbitrate constitutes valid

---

[26]*Id.*; *Daskalakis v. Forever 21, Inc.*, No. 15-CV-1768, 2016 WL 4487747, at *4 (S.D.N.Y. August 25, 2016); *see Hooters of Am. v. Phillips*, 39 F. Supp. 2d 582, 606–07 (D.S.C. 1998) (applying South Carolina law, and stating: "In the orthodox situation the content of arbitration rules would not constitute a material term of the agreement because such rules would address merely procedural matters of the forum.").

[27]*Varney Business Servs., Inc. v. Pottroff*, 59 P.3d 1003, 1014 (Kan. 2002).

[28]*Id.* (citing 2 Corbin on Contracts § 5.20 (rev. ed. 1995)).

[29]*Id.* at 11-1.

consideration.[30]  Defendants agreed to submit any claims against Plaintiff to arbitration.  Thus,

assuming as true Plaintiff's contention that he is neither eligible for nor a participant in

Defendants' various benefit plans, Defendants still provided consideration in the form of a

mutual promise to arbitrate.  As such, the Arbitration Agreement is not unenforceable for lack of

consideration.

## III.  Conclusion

The Court concludes that a valid arbitration agreement exists between the parties in this

matter.  Plaintiff does not dispute that his FLSA claims are within the scope of the Arbitration

Agreement.  Because Plaintiff's claims are "for wages or other compensation," and are based on

the violation of a federal statute, they fall within the scope of the Arbitration Agreement.  Thus,

Defendants' motion to compel arbitration must be granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to

Compel Arbitration and to Stay this Action (Doc. 12) is **granted**.  This case is hereby stayed

pending arbitration.  The parties shall file a status report no later than December 29, 2017

advising the Court whether the arbitration proceeding is ongoing, and whether a date has been set

for the proceeding.

**IT IS SO ORDERED.**

Dated: September 12, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[30]*See, e.g.*, *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 F. A'ppx 812, 819 (10th Cir. 2008); *Felling v. Hobby Lobby, Inc.*, No. 2005 WL 928641, at *4 (D. Kan. Apr. 19, 2005).